Judgment rendered December 3, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,529-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KATHERINE WINZER                          Plaintiff-Appellant

versus

BIENVILLE PARISH SCHOOL                   Defendants-Appellees
BOARD AND DR. BYRON
LYONS, IN HIS OFFICIAL
CAPACITY AS
SUPERINTENDENT OF THE
BIENVILLE PARISH SCHOOL
BOARD

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Bienville, Louisiana
Trial Court No. 46,836

Honorable Charles Glenn Fallin, Judge

* * * * *

BLACKWELL & BULLMAN, LLC                  Counsel for Appellant
By: Brian Francis Blackwell

HAMMONDS, SILLS, ADKINS, GUICE,           Counsel for Appellees
NOAH & PERKINS, LLP
By: Thomas Moore Hayes, IV

* * * * *

Before PITMAN, COX, and ROBINSON, JJ.

**ROBINSON, J.**

On January 29, 2025, Plaintiff, Katherine Winzer ("Winzer"), filed a petition for issuance of alternative writ of mandamus, naming as Defendants, Bienville Parish School Board ("BPSB") and Dr. Byron Lyons ("Lyons"), in his Official Capacity as Superintendent of the BPSB (collectively, "Defendants"). Winzer claimed that she had been demoted from the position of Principal to the position of high school English teacher, and later librarian, without the School Board or Superintendent complying with the Teacher Tenure Law. She asked the trial court to order her reinstatement to the position of principal retroactive to the date of her alleged demotion. Defendants answered the petition on March 4, 2025, pleading exceptions of no cause of action and improper use of a summary proceeding. Winzer opposed Defendants' exceptions. Following a hearing on March 10, 2025, the trial court denied Defendants' exceptions as well as Plaintiff's alternative writ of mandamus. A formal judgment was signed and filed signed on March 19, 2025, from which Winzer appeals.

## FACTS AND PROCEDURAL BACKGROUND

Winzer was the principal at Bienville School employed by virtue of a Promotional Contract with a term of July 18, 2023, to July 19, 2025 (the "Contract"). Relevant provisions of the Contract provide:

> Appointee shall be retained during the term of this contract unless he is found to be incompetent, inefficient, or is found to have failed to fulfill the terms and performance objectives of this contract. Appointee shall be removable from his or her position for such cause in accordance with the procedures established by law.

> Appointee understands and agrees that the Superintendent has the right to transfer or reassign him or her to another position for which he or she is certified and of which is of equal pay when it

is considered to be in the best interest of the school system to do so. Appointee understands and agrees that his or her employment is not at a particular school or site.

Winzer testified that, at the time she became principal in July 2023, Bienville School was being used as a preschool and for alternative education for disciplinary reasons, with two teachers employed. In August 2024, the school consisted of the disciplinary alternative program and a daily living skills program, with approximately six students total, though that number varied throughout the school year. On October 25, 2024, the day she received notice that she was being transferred from her position as principal, there was only one teacher employed and a few students attending the school. Those students were bussed out that same day.

Winzer was originally transferred to the position of English teacher at Gibsland-Coleman High School (grades Kindergarten through 12), effective October 28, 2024; however, she declined to appear for work, opting to take sick leave. As a result, on November 18, 2024, Winzer was notified of her transfer to the position of librarian at Gibsland-Coleman High School, effective November 22, 2024. Winzer asserted that she was neither certified to teach high school English, nor be a librarian. However, Defendants assert that Winzer was scheduled to teach elementary/middle school English, for which she was certified, and that the librarian position did not require any certification. Lyons testified that the transfers were the result of the insufficient enrollment numbers due to the structure of the school district. At the time of both transfers, there were no open principal positions in Bienville Parish, nor was there any testimony or evidence that there were

2

any positions available of a "higher level" than those to which Winzer had been transferred to.

Following Winzer's initial transfer, the school no longer maintained faculty or staff, other than one secretary who scheduled professional development sessions on the premises. As of the date of the appeal, Winzer had not worked at Gibsland-Coleman High School for either position since being assigned. However, she continued to receive the full compensation owed to her pursuant to the Contract through its term.

**DISCUSSION**

Winzer claims that her transfer from the position of principal to the position of classroom teacher, then to librarian, was an "involuntary demotion" that constituted "discipline" as defined by La. R.S. 17:441(2), and the Defendants failed to comply with the statutory requirements set forth in La. R.S. 17:444(B)(4)(c)(iii) and La. R.S. 17:443(B) of the Teacher Tenure Law, because she never received any charges and no hearing was held prior to her demotion. As such, the transfer was null, void, and without legal effect.

Louisiana's Teacher Tenure Law, La. R.S. 17:441 through La. R.S. 17:445, defines the status of Louisiana's public school teachers and outlines procedures a school board must follow pertaining to their retention and discharge. La. R.S. 17:444(B)(4)(c)(iii) provides:

> The employee shall be retained during the term of a contract unless the employee is found incompetent or inefficient or is found to have failed to fulfill the terms and performance objectives of his contract. However, before an employee can be removed during the contract period, he shall have the right to written charges and a hearing before a disciplinary hearing officer in the manner provided in R.S. 17:443.

3

Winzer refers to this Court's decision in *Smith v. Ouachita Parish School Board*, 29,873 (La. App. 2 Cir. 9/24/97), 702 So. 2d 727, 737, *writ denied*, 97-2721 (La. 1/16/98), 706 So. 2d 978, that, "The motivation behind the enactment of the Teacher Tenure Law was to prevent arbitrary removal of teachers and to require strict adherence with statutory requirements before removal." The purpose of the Teacher Tenure Law is to protect teachers by providing them "with security in the position, grade, or status they have attained." *Hays v. La. State Board of Elementary and Secondary Education*, 09-1386 (La. App. 1 Cir. 6/11/10), 39 So. 3d 818, 821, *writ denied*, 10–1640 (La. 10/8/10), 46 So. 3d 1272.

Defendants argue that La. R.S. 17:444(B)(4)(c)(iii) of the Teacher Tenure Law does not apply because Winzer's transfer of position was not disciplinary in nature, and she was not denied due process. They refer to the language in the Contract confirming Winzer's understanding that Lyons had the right to transfer or reassign her to another position of equal pay when in the best interest of the school system. They claim that Lyons exercised his discretion pursuant to the Contract and elected to transfer Winzer from her position as principal at Bienville School to English teacher at Gibsland-Coleman High School, because, at the time of Winzer's reassignment, the school had no faculty or students due to the restructuring of the school district, and there were no other principal positions available in Bienville Parish. Defendants point out that Winzer continued to receive the full compensation owed to her under the Contract.

Defendants further assert that while the purpose of the Teacher Tenure Law is to ensure teachers with security in the position, grade, or status they

4

have attained, and not merely to ensure them with teaching employment, the law was not intended to guarantee job security where there are no jobs. *Hays*, *supra*. They further argue that it has long been held that for the purposes of the Teacher Tenure Law, demotion itself is not the key factor indicating if discipline occurred; instead, the question is whether a reduction in salary occurred. *Pasqua v. Lafourche Parish School Board*, 408 So. 2d 438 (1981).

Winzer also claims that the trial court erred in determining that there was no school at which she could be reinstated as principal, in light of Lyons' testimony and other evidence. She asserts that only school boards can determine the number of schools to be opened, the locations of the schools, and the number of teachers and other school personnel to be employed; therefore, superintendents do not have the legal authority to close schools or discontinue positions that have been authorized by their authorizing school board. She states that BPSB never acted to close Bienville School or discontinue the position of principal at that school.

However, Defendants assert that the continued operation of Bienville School was not possible. They refer to La. R.S. 17:152:

> No school with an average attendance below ten pupils shall be opened or maintained in any locality, except upon recommendation of the parish school board, giving its reason for such recommendation, and upon approval by the Louisiana State Board of Education.

In addition, since the duties of a principal include the supervision of the school facility, faculty, and staff, there was no longer anyone at Bienville School for the principal to supervise in order to necessitate the position.

5

Winzer also argues that she is entitled to a writ of mandamus directing reinstatement because the statute provides that she "shall" be retained during the term of the contract unless she was found to have failed to fulfill the contract objectives. Further, should there be a cause for removal, she "shall" be entitled to written charges and a hearing before a disciplinary hearing officer before being removed during the contract period.

Defendants further argue that the very language of the Contract – Lyons' right to transfer Winzer to another position of equal pay for which she is certified if it is in the best interest of the school system – is the definition of discretionary, such that the remedy of a writ of mandamus would be barred.

### Writ of Mandamus

The writ of mandamus is an extraordinary remedy to be used sparingly and only to compel action that is clearly provided for by law. *Bonvillian v. Dept. of Ins.*, 04-0332 (La. App. 1 Cir. 2/16/05), 906 So. 2d 596, *writ not considered*, 05-0776 (La. 5/6/05), 901 So. 2d 1081. The remedy of mandamus may not issue to compel the performance of any act which contains an element of discretion. *Hoag v. State*, 04-0857 (La. 12/1/04), 889 So. 2d 1019; *Allen v. St. Tammany Parish Police Jury*, 96-0938 (La. App. 1 Cir. 2/14/97), 690 So. 2d 150, *writ denied*, 97-0599 (La. 4/18/97), 692 So. 2d 455. Rather, a writ of mandamus only applies to actions that are purely ministerial in nature. *Hoag*, *supra*. A ministerial duty is one that is so clear and specific that no element of discretion can be exercised in its performance. If a duty requires the exercise of judgment and discretion by the public officer, it is not ministerial for purposes of a cause

6

of action for mandamus. *Big Train Construction Company, Inc. v. Parish of St. Tammany*, 446 So. 2d 889 (La. App. 1 Cir. 1984); *Acadiana Bank v. Hayes*, 498 So. 2d 275 (La. App. 1 Cir. 1986).

However, writs of mandamus have been allowed in cases to correct an arbitrary and capricious abuse of discretion by public boards or officials. *State ex rel. Torrance v. City of Shreveport*, 231 La. 840, 93 So. 2d 187 (1957); *State ex rel. People's State Bank v. Police Jury of Red River Parish*, 154 La. 389, 97 So. 584 (1923); *La. Dept. of Treasury, Board of Trustees of State Employees Group Benefits Program v. Williams*, 451 So. 2d 1308 (La. App. 1 Cir. 1984). This Court held in *Hill v. Caddo Parish School Board*, 250 So. 2d 446, 449 (La. App. 2 Cir. 1971), that a teacher covered by the Teacher Tenure Act who had been discharged without compliance with its provisions was entitled to a writ of mandamus directing reinstatement, reasoning as follows:

> Under the decision of the Louisiana Supreme Court in *State ex rel Fields v. Rapides Parish School Board*, 227 La. 290, 79 So. 2d 312 (1955), mandamus pursuant to Articles 3861-3866 of the Code of Civil Procedure is the appropriate remedy to enforce a teacher's rights where a teacher is discharged without compliance with the provisions of the tenure law. The duty of a school board to follow the statutory provisions governing dismissal of a teacher is purely ministerial and may be coerced by mandamus. It is our opinion that a teacher covered by the tenure law who has been discharged without compliance with the provisions of the law is entitled to a writ of mandamus directing reinstatement and, incidentally, payment of salary.

Mandamus is a proper procedural remedy for enforcement of rights of a teacher covered by the Teacher Tenure Act where the teacher was discharged without compliance with its provisions. *Easterling v. Monroe City School Board*, 612 So. 2d 975 (La. App. 2 Cir. 1993).

7

The Fourth Circuit discussed whether a teacher's transfer was considered a "removal" for purposes of the Teacher Tenure Act in *Slaughter v. East Baton Rouge Parish School Board*, 82-0670 (La. App. 4 Cir. 4/5/83), 432 So. 2d 905, *writ denied*, 83-1525 (La. 9/30/83), 439 So. 2d 1074. In *Slaughter*, the transfer was not considered a "removal" which triggered the provisions of the Teacher Tenure Act because the teacher received the same salary, no additional training was required, she was certified to teach the assigned subject, and the transfer did not follow a dismissal without formal charges or a hearing. The Court referred to its holding in *Rosenthal v. Orleans Parish School Board*, 214 So. 2d 203, 207 (La. App. 4 Cir. 1968), in which the court set out when a transfer is considered a removal:

> Our jurisprudence established that the transfer of a teacher from one position to another, by a Parish School Board, does not constitute a removal from office, as prohibited by the Teachers' Tenure Law, unless: (1) A reduction in salary is involved; (2) the new position requires the teaching of subjects for which the teacher is not qualified; (3) the teacher must undergo additional training, at his expense, in order to obtain permanent certification in his new post; and (4) the transfer follows a dismissal without formal charges, or a hearing, and thus leaves a blot on the teacher's record.

A plaintiff's mere expectancy of continued employment does not restrict the school board's power to transfer. *Slaughter*, *supra*; *Rosenthal*, *supra*. Further, the school board has a duty to transfer teachers when it is in the best interest of pupils and the system. *Id*.

In *Taube v. St. Charles Parish School Board*, 00-1805 (La. App. 5 Cir. 4/11/01), 787 So. 2d, the Fifth Circuit upheld the trial court's denial of a petition for mandamus, finding that, while the school board had a clear ministerial duty to assign the plaintiff to his pre-sabbatical position at the pre-sabbatical school, it did not require the assignment to be for any

particular time period. Thus, reassigning the plaintiff one day after he returned to his position did not violate a ministerial duty clearly provided by law. The Court explained the issuance of mandamus in the context of a public officer, as follows:

> A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty that is required by law. La. C.C.P. arts. 3861, 3863. A writ of mandamus is properly issued only when the law provides no relief by ordinary means or when the delay involved in obtaining ordinary relief may cause injustice. La. C.C.P. art. 3862. Thus, a writ of mandamus is appropriately issued against a public officer (1) when the public officer has refused to perform a ministerial duty that is clearly provided by law, and (2) when a mandamus is the only available remedy or the delay caused by the use of any other remedy would cause injustice. Both requirements must be met in order for a court to properly make a writ of mandamus peremptory. *Id*.

An appellate court's standard of review for the denial of the request of relief per writ of mandamus is abuse of discretion. *Cooley v. Williams*, 22-564 (La. App. 4 Cir. 1/30/23), 358 So. 3d 127; *Construction Diva, L.L.C. v. New Orleans Aviation Board*, 16-0566 (La. App. 4 Cir. 12/14/16), 206 So. 3d 1029.

Although mandamus may be an appropriate remedy for this particular type of matter in that Winzer was seeking reinstatement of a position, the underlying duty of the public officer, Lyons, giving rise to Winzer's claim must be a ministerial duty clearly provided by the law in which no element of discretion can be exercised in its performance. Here, Lyons had the right to transfer or reassign Winzer to another position of equal pay for which she was certified when it was considered to be in the best interest of the school system to do so. Winzer continued to receive the same salary following the transfers, and she was certified to teach middle school English, the position

9

to which she was initially transferred. It was not until Winzer failed to appear for the teaching position that she was then transferred to the librarian position. Although she did not carry a specific certification to be a librarian, uncontradicted testimony indicated that no certification was required for that position. As such, Winzer was qualified for both positions, and no additional training was necessary. Considering Bienville's continued insufficient enrollment resulting in there being no students and no teachers, it would not have been in the best interest of the school system to maintain the position of principal when there was no need for the role. The requirements of La. R.S. 17:444(B)(4)(c)(iii) regarding the removal of an employee during their contract period were not violated by Lyons' actions, which were discretionary as well as compliant with the terms of the Contract. As such, mandamus would be improper due to the discretion vested in Lyons to effectuate Winzer's transfer. Therefore, we find no abuse of discretion by the trial court in its denial of Winzer's petition for writ of mandamus.

## CONCLUSION

For the foregoing reasons, we AFFIRM the trial court's judgment. All costs of this proceeding are to be assessed to Winzer.

**AFFIRMED.**

10