DRAKE, J.
Defendants/Appellants, the City of Zachary (“City”); Francis Nezianya, Brandon Noel, John Coghlan, Dan Wallis, and Tommy Womack, all in their capacities as *3 members of the City Council of the City of Zachary (“Council”); and David Amrhein, in his capacity as the mayor of the City of Zachary (“Mayor”), appeal a final judgment of the district court that made peremptory a writ of mandamus filed' by Plaintiff/Appellee, Zachary Housing Partners, L.L.C. (“ZHP”), and ordered the defendants to unanimously approve Plain-tiffiAppellee’s site plan and resubdivision applications. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

This case involves a proposed multifamily apartment complex, which ZHP desires to construct on a tract of land within the city limits of Zachary, Louisiana. The dispute revolves around a purported discrepancy between the current zoning designation for the subject property and the future land use designation for the same property, as set forth by the City’s Comprehensive Master Plan.
On March 28, 2012, ZHP purchased over 29 acres of land on McHugh Road for the purpose of developing ten of those acres into a 156-unit, multi-family apartment complex called “The Village at Magnolia Trace.” The property was, and is currently, zoned Residential/Urban and is located behind a hospital, Lane Regional Medical Center, and between an assisted care facility and apartment duplexes.
Prior to the purchase of the property, ZHP initiated the process of obtaining the permits and approvals required to construct and operate its housing project within the municipal limits of the City. To determine the viability of the property for the development of a multi-family apartment complex, ZHP contacted the City’s code .compliance officer, Hugh. Engels, to request information about the zoning of the property. In a letter to ZHP dated May 27, 2011, Mr; Engels stated that the property was zoned Residential/Urban and Residential/Estate, which allowed for the development of a residential complex such as the one proposed by ZHP.
In accordance with the City’s Unified Development Code (“UDC”), ZHP then submitted applications for site plan review and resubdivision.[1] ZHP also scheduled a pre-application conference with Mr. Engels.[2] At the pre-application conference, Mr. Engels suggested that, prior to turning in its site plan review and resubdivision applications to the City’s Planning Commission, ZHP should review the City’s Comprehensive Master Plan and Future Land Use Plan Map, because these documents designated the future land use of the property as Agricultural and Forestry. Nevertheless, Mr. Engels accepted ZHP’s applications and scheduled a Site Plan Review Committee meeting.
At the Committee meeting, Mr. Engels again noted that there was a discrepancy between the current zoning of the property and the future land use designation of the property under 'the- Master Plan. Despite this, the Committee allowed ZHP’s applications to proceed to a public hearing before the Zachary Planning Commission. At the public hearing,- Mr. Engels again stated that the City’s Master Plan designated the future land use of the property as Agricultural and Forestry. At the conclusion of the meeting, the Commission voted unanimously to approve ZHP’s applications, contingent upon agreed-upon concessions and conditions.
*4 ZHP’s applications were then set for public hearing before the Council. Following testimony from Mr. Engels, members of ZHP, as well as individuals from the community who spoke in opposition to the project,[3] the Council unanimously voted to deny ZHP’s site plan application based on its lack of continuity, or incompatibility, with the designated future planned use of the property as outlined in the Master Plan and Future Land Use Plan Map. The Council also voted unanimously to deny ZHP’s resubdivision application.
Following the denial of its applications, ZHP filed a petition for writ of mandamus, judicial review, declaratory judgment, in-junctive relief, and for damages. Following a trial of the mandamus claim, the district court ruled in favor of ZHP, made the writ of mandamus peremptory, and ordered the Council to unanimously approve ZHP’s site plan and resubdivision applications.- The defendants now appeal.

DISCUSSION

Standard of Review

A legislative body’s decision to deny a use by right, in compliance with the applicable zoning ordinances is subject to strict scrutiny, not the normal standard of broad discretion applied to variance cases. D’Argent Properties, LLC v. City of Shreveport, 44,457 (La.App. 2 Cir. 6/24/09), 15 So.3d 334, 340, writ denied, 09-1726 (La.11/6/09), 21 So.3d 308; see also La. Const. art. VI, § 17; La. R.S. 33:4722-26. The reviewing court does not consider whether the district court manifestly erred in its findings, but whether the legislative body acted arbitrarily, capriciously, or with any calculated or prejudicial lack of discretion. Papa v. City of Shreveport, 27,045 (La.App. 2 Cir. 9/29/95), 661 So.2d 1100, 1103, writ denied, 95-2544 (La.1/5/96), 666 So.2d 295. The test of whether an action is arbitrary or capricious is whether the action is reasonable under the circumstances. Id.

Assignments of Error

This dispute revolves around a purported discrepancy between the current zoning designation for the subject property and the future land use designation for the same property. The land is currently zoned Residential/Urban under the UDC. A Residential/Urban designation permits the construction of a multi-family apartment complex; such as the one proposed by ZHP. However, the Future Land Use Plan Map, adopted in conjunction with the City’s Master Plan, designates the future land use of the property as Agricultural and Forestry. Under the Master Plan, ZHP’s proposed apartment complex is not a permissible “future use” of the property.
The appellants argue that the district court erred when it granted ZHP’s writ of mandamus, which required the Council to perform what the appellants argue is a discretionary function. The appellants aver that the Council had the discretion to ensure that ZHP’s development was consistent with the City’s Master Plan, pursu *5 ant to Section 6.101 of the UDC. The appellants further argue that the district court erred in holding that the Council was arbitrary and capricious in relying on the City’s Master Plan in denying'ZHP’s site plan and resubdivision applications.

Zoning Regulations

Any local governmental subdivision may draft, adopt, or amend a home rule charter. La. Const. art. VI, § 5(A); La. R.S. 33:1395(A). Louisiana Constitution article VI, § 5(E), read in conjunction with article VI, § 6, allots to home rule charter local governments exclusive control over the operation, management, and internal arrangement of the component parts of its local government. Lafourche Parish Council v. Autin, 94-0985 (La.12/9/94), 648 So.2d 343, 356. In this case, the City hád adopted a home rule charter pursuant to Article VI, § 5 of the Louisiana Constitution. Therefore, the City operates under a home rule charter and is authorized to exercise any power and perform any function necessary, requisite, or proper for the management of its local affairs.[4] See La. Const. art. VI, § 5(E). This authority includes the power to enact and enforce zoning regulations.
Zoning is a general plan designed to foster improvement by confining certain classes of buildings and uses of property to certain localities. Jenkins v. St. Tammany Parish Police Jury, 98-2627 (La.7/2/99), 736 So.2d 1287, 1290. Local governments are provided with broad powers to adopt regulations for land use, zoning, and historic preservation. Louisiana Constitution article VI, § 17, provides, in pei’tinent part:
Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement those regulations; (3) review decisions of any such commission;' and (4) adopt standards for use, construction, demolition, and modification of areas and structures.
Local governments have the authority to enact municipal zoning regulations. Louisiana Revised Statutes 33:4721 states:
For the purpose of promoting health, safety, morals, or the general welfare of the community, the governing, authority of all municipalities may regulate and restrict the height, number of stories, and size of structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of the buildings, structures; and land for trade, industry, residence, or other purposes; provided that zoning ordinances enacted by. the governing authority of municipalities or the acts of the zoning commission, board of adjustment as herein provided for, or zoning administrator shall be subject to judicial review on the grounds of abuse of discretion, unreasonable exercise of the police powers, an excessive use of the power herein granted, or the denial of the right of due process, provided, further, that the right of- judicial review of a zoning ordinance shall not be limited by the foregoing.
Zoning regulations must be uniformly applied within each district or zone of the municipality. La. R.S. 33:4722(0), Such regulations and procédúres must be strictly construed in favor of the use proposed by the owner. Wright v. DeFatta, 244 La. 251, 260, 152 So.2d 10, 14 (1963).
*6 In order to exercise these zoning powers, the municipality must appoint a zoning commission. La. R.S. 33:4726. The function of the zoning commission is to propose to the municipality a set of recommendations concerning the boundaries of zones and the regulations and restrictions to be enforced therein. If a planning commission exists, that commission automatically becomes the zoning commission. "Wien the planning commission serves these dual roles, it must hold separate meetings and keep separate records concerning its function as the zoning commission. La. R.S. 33:106(D); King v. Caddo Parish Comm’n, 97-1873 (La.10/20/98), 719 So.2d 410, 417.
The zoning commission must give notice to the public and hold public hearings on proposed recommendations before they can be transmitted to the legislative body of the municipality.. La. R.S. 33:4726(A). Once the legislative body receives the recommendations of the zoning commission, it must conduct a hearing on the proposed recommendations and give the public adequate notice of the hearing. La. R.S. 33:4724(B).

The City’s Comprehensive Master Plan and Unified Development Code

By resolution dated April 27, 2010, the Council adopted a Comprehensive Master Plan to guide development within the city limits by sustaining the City’s commitment to well-managed growth, environmental responsibility, redevelopment and enhancement of its downtown area, improved neighborhood integrity, and prosperity and economic opportunity. The Master Plan was developed in. accordance with the mandatés of Louisiana Revised Statutes 33:106, which provides, in pertinent part:
* * *
A. (2) A,municipal planning commission shall make and adopt a master plan for the physical development of the municipality.
B. (1) Any such plan shall provide a general description or depiction of existing roads, streets, highways, and publicly controlled corridors, along with a general description or depiction of other public property within the jurisdiction that is subject to the authority of the commission.
One purpose of the Master Plan was to identify the present and future land use for parcels of property within the city limits.
In connection with the Master Plan, the City adopted the UDC and Official Zoning Map.[5] The City’s UDC was adopted by ordinance on July 13, 2010, and the Official Zoning Map was also adopted by ordinance on August 24, 2010. One purpose of the UDC is to “promote the public health, safety, comfort, morals, convenience, and general welfare” by “[p]reserving, enhancing, and protecting the unique and special character of the City,” by implementing the City’s Master Plan.[6] The UDC applies to all property that is located within the corporate limits of the City.[7] No land shall be used or developed except in accordance with the City’s.UDC.[8] At the trial on ZHP’s writ of mandamus, the appellants stipulated that ZHP met the objective criteria for their applications under the UDC. They also stipulated that the sole articulated reason for the denial of *7 ZHP’s application's was “incompatibility” with the City’s Master Plan.
| Analysis
The instant case is a situation in which an owner seeks a use by right, in compliance with the applicable zoning ordinances, conforming to every modification imposed and approved by the City’s Planning and Zoning Commissions. ZHP’s site plan, as approved by the Planning Commission, to build a multi-family apartment complex as a use by right, was valid. No person who testified at the Council meeting demonstrated or presented evidence of how ZHP’s site plan failed to address any problems noted by officials and members of the community. Zoning ordinances and actions must be strictly construed in favor of the use proposed by the owner. Wright, 152 So.2d at 14.
The district court ruled in favor of ZHP, holding that the City was “arbitrary and capricious in denying the plaintiffs their right to use the property by trying to rezone the property ... to rural agriculture.” We agree. While the Master Plan designates the future use of the property as Agricultural and Forestry, the UDC and Official Zoning Map indicate that the property is currently zoned Residential/Urban and, .as such, permits the development of ZHP’s apartment complex. Despite being currently zoned as Residential/Urban, the City, argued that the future land use character of the property purchased by ZHP was Agricultural and Forestry. At the trial on the writ of mandamus, the City’s code compliance officer, Mr. Engels, testified on behalf of the defendants. The district court asked Mr. Engels to indicate at what point in the future the Master Plan’s designation of the “future use” of the land is triggered. Mr. Engels responded “it’s just called for whenever the person wants to rezone the piece of property,” which could be some time “over the next twenty years.” We note that ZHP was not attempting to rezone its property, but to simply use the land in accordance with its current official zoning designation.
The district court recognized that, at some arbitrary point in the future, the Master Plan would effectively rezone property in the City based on the future land use designations as set forth in the Master Plan. The future land use designation of ZHP’s property denies ZHP the use by right of its land under validly enacted zoning ordinances. In this case, the Council’s reliance on the Master Plan over the City’s zoning ordinances teeters dangerously on the edge of becoming an unconstitutional taking of property and a due process violation.
A writ of mandamus is an extraordinary remedy set forth'in the Code of Civil Procedure. It may be directed to a public officer to compel performance of a ministerial duty that is required by law. La. C.C.P. art. 3863. A writ of mandamus will issue only when there is a clear and specific rig'ht to be enforced or a duty which ’ ought to be performed. ‘ It never issues in doubtful cases. Louisa Seafood Co., Inc. v. Louisiana Wildlife & Fisheries Comm’n, 546 So.2d 571, 573 (La.App. 1st Cir.1989). Our jurisprudence is clear that such a writ may not issue to compel performance of an act which contains any element' of discretion, however slight. Rather, the act must be purely ministerial. Big Train Const. Co., Inc. v. St. Tammany Parish, 446 So.2d 889, 890 (La.App. 1st Cir.1984); Affordable Housing Developers, Inc. v. City of Baton Rouge, 95-0015 (La.App. 1 Cir. 10/6/95), 671 So.2d 381, 383. In reviewing a writ of mandamus, the district court is limited to the question of the duty of fact of the enacted legislation and the ministerial character of the duty the official is asked to perform. Plaisance v. *8 Davis, 03-0767 (La.App. 1 Cir. 11/7/03), 868 So.2d 711, 718, writ denied, 03-3362 (La.2/13/04), 867 So.2d 699. In a situation in which a landowner, such as ZHP, seeks a use by right, in compliance with the applicable zoning, conforming to every modification imposed and approved by the City’s Planning Commission, the use by right should be presumptively valid and approved., Urban Housing of America, Inc. v. City of Shreveport, 44,874 (La.App. 2 Cir. 10/28/09), 26 So.3d 226, 230, writ denied, 10-0026 (La.4/23/10), 34 So.3d 269; see D’Argent Properties, 15 So.3d at 340; see also La. Const art. VI, § 17; La. R.S. 33:4722.
Furthermore, we distinguish King v. Caddo Parish Comm’n, supra, and several other cases cited by the appellants, on a factual basis. Those cases involved requests for variances, special exceptions, or rezoning of a particular piece of land. Here, the Council was not “adopting, approving, or promulgating any local laws, ordinances, or, regulations” when considering ZHP’s applications.[9]
We conclude, that, in denying ZHP’s site plan and resubdivision applications, the. Council acted arbitrarily and capriciously, with violation of due process implications. We therefore affirm the ruling of the district court..

DECREE

For the foregoing reasons, the judgment of the district court, which made peremptory the writ of mandamus filed by Plaintiff/Appellee, Zachary Housing Partners, L.L.C., and ordered the defendants to unanimously approve Plaintiff/Appellee’s site plan and resubdivision applications, is affirmed. All costs of this appeal, in the amount of $1,637.50, are assessed to the Defendants/Appellants, the City of Zachary; Francis Nezianya, Brandon Noel, John Coghlan, Dan Wallis, and Tommy Womack, all in their capacities as members of the City Council of the City of Zachary; and David Amrhein, in his capacity as the Mayor, of the City of Zachary.
AFFIRMED.
GUIDRY, J., concurs.
RHP by PARRO, concurs without reasons.

. The UDC limits developments of this nature to tracts of greater than four acres, but less than ten acre sites.

. City of Zachary Unified Development Code, §§ 14.602 and 14.603.

. In opposition to ZHP's site plan application, members of the community expressed concern over the oversaturátion of apartment complexes in the City, flooding, sewage and drainage, traffic (specifically, non-resident students catching buses at apartment complexes located in the, City), fire, noise, lighting, impact on wildlife/ and property values. A community resident worried about potential apartment complex residents ruining the Zachary Community School System. Another person worried about the potential oversat-uration of the apartment complex market with residents he described as "riff-raff.” In addition, Air. Thomas Delahaye, the managing member of C.S.T, Land Developers, which owns ZHP, testified that one member of the public stated that “he, didn’t want those people with boom boxes in his neighborhood.”

. Zachary, Louisiana Code of Ordinances, pt. 1, art. I, § 1-02.

. City of Zachary, Unified Development Code, § 15.301.

. City of Zachary, Unified Development Code, § 15.103.

. City of Zachary, Unified Development Code, § 15.201(A).

. See City of Zachary, Unified Development Code, §§ 13.201, 14:502, 14.303.